**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WAYNESBOROUGH COUNTRY CLUB | : | |
| OF CHESTER COUNTY | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | CIVIL ACTION |
| Defendants | : | |
| | : | |
| and | : | |
| | : | NO. 07-155 |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| EHRET CONSTRUCTION COMPANY, INC. | : | |
| Third-Party Defendant. | : | |

**MEMORANDUM AND ORDER**

GENE E.K. PRATTER, J.                                                MARCH 10, 2008

Planning a new clubhouse, Waynesborough Country Club of Chester County

("Waynesborough") entered into an Architectural Services Contract with an architecture firm and

a Construction Contract with a general contractor.  After the clubhouse was complete, structural

problems arose, and Waynesborough sued the architecture firm.  The architecture firm then filed

a third-party suit against the general contractor seeking contractual and common law indemnity as well as contribution.

Third-party defendant Ehret Construction Company, Inc. ("Ehret") asks the Court to dismiss pursuant to Rule 12(b)(6) the third-party complaint of Diedrich Niles Bolten Architects, Inc., et al. ("DNB"). Ehret argues (1) that DNB cannot seek indemnity under the project's Construction Contract because DNB is not a third-party beneficiary of that contract; (2) that DNB cannot seek common law indemnity because Pennsylvania does not recognize a cause of action for purely economic damages by parties not in contractual privity; and (3) that DNB has not shown that it is presently entitled to assert a claim for contribution.

For the following reasons, the Court will deny the motion.


**I. Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) permits the Court to look only at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

**II. Factual and Procedural Background**

As mentioned above, this case concerns the construction of a country club's new clubhouse.  Waynesborough seeks damages arising from alleged structural problems that Waynesborough claims appeared after construction was complete.

In 1999, Waynesborough decided to replace its existing clubhouse.  Waynesborough and DNB entered into an Architectural Services Agreement on or about January 19, 2001.  See, Third-Party Compl., Ex. A.  The architects prepared construction drawings between March and June 2003, and in May 2003, construction on the new building commenced.  Ehret was the general contractor and construction manager for the project.  After Ehret completed construction of the building, water leaks reportedly developed throughout the structure, causing both internal and external damage.  Waynesborough filed suit against DNB on January 12, 2007.

Waynesborough's suit against DNB alleges professional negligence and breach of contract.  Specifically, Waynesborough accuses DNB of negligent preparation of construction drawings and specifications, negligent oversight of the construction process, negligent review of substitutions and/or modifications made by the contractors, and negligent design of termination points in the building.  Waynesborough maintains that this professional negligence proximately caused water to infiltrate the new clubhouse.  See, Compl., Count I at 5-6.  Waynesborough also asserts that DNB breached the Architectural Services Agreement for the same conduct that prompts the professional negligence claim.  See, Compl., Count II at 7-8.

DNB has filed a third-party complaint against Ehret.[1]  Ehret, of course, was in contractual

---

[1]Rule 14(a) permits a defendant to join as a third-party defendant a person "who is or may be liable to [the defendant] for all or part of the plaintiffs' claim against [defendant]." "This rule has uniformly been construed to prohibit the joinder of a third-party defendant solely on the basis

privity with Waynesborough through a written Construction Contract.  See, Third-Party Compl.,

Ex. B.  DNB's third-party complaint seeks contribution and indemnity, as well as attorneys' fees,

from Ehret to the extent that DNB may be found liable to Waynesborough.  DNB asserts that if it

faces any liability, it is due to Ehret's general negligence, carelessness, and breach of the

Construction Contract.  DNB's primary theory of liability against Ehret is that DNB has certain

rights *vis á vis* Ehert emanating from the Construction Contract between Waynesborough as the

project owner and Ehret as the general contractor.    However, DNB also asserts common law

causes of action for indemnity and contribution based on its allegation that Waynesborough is

suing for damages caused by the negligence of both DNB and Ehret.

      Ehret responded to this third-party complaint with the instant motion for dismissal.  Ehret

argues that DNB has no cognizable claims against Ehret.

---

of that third-party's direct liability to the plaintiff." Chase v. North Amer. Systems Inc., 523 F. Supp. 378, 380 (W.D. Pa. 1981).  See, e.g., Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 368, note 3, (1978); Millard v. Municipal Sewer Authority of Lower Makefield Township, 442 F.2d 539, 541 (3d Cir. 1971).  Rule 14(a) limits federal third-party practice to a much greater degree than Pennsylvania law limits state practice concerning the joinder of additional defendants or claims between or among defendants.  Under Pennsylvania law, a third-party complaint, in effect, may tender a different defendant to the plaintiff.  See, Pennsylvania R. of Civ. P. 2252(a) ("in any action the defendant or any additional defendant may, as the joining party, join as an additional defendant any person … who may alone be liable … on the cause of action declared upon by the plaintiff…").  Because this case is brought in federal court, DNB may not simply offer up Ehret as the "correct"or "better" defendant for Waynesborough's claims through a third-party complaint.

**III. Discussion[2]**

**A.      Third-Party Beneficiary Liability**

DNB maintains that it is a third-party beneficiary of the Construction Contract between Ehret and Waynesborough and, thus, is entitled to indemnity from Ehret if DNB is found liable to Waynesborough.  See, Third-Party Compl. ¶ 15.  Ehret counters that the Construction Contract does not entitle DNB to indemnity from Ehret because the contract does not establish DNB as a third-party beneficiary.

Unless otherwise agreed by the parties to the contract, an entity – here DNB – becomes a third-party beneficiary of a contract only if:

> recognition of a right to performance in [DNB] is appropriate to effectuate the intentions of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to [DNB], or (b) the circumstances indicate that the promisee intends to give [DNB] the benefit of the promised performance.

*Restatement (Second) of Contracts § 302* (1979); Scarpitti v. Weborg, 609 A.2d 147, 150 (Pa. 1992).  See also, Guy v. Leiderbach, 459 A.2s 744 (Pa. 1983).  The Scarpitti court noted that "the first part of the test sets forth a standing requirement which leaves discretion with the court," while the second portion "defines the two types of claimants who may be intended as third party beneficiaries."  Scarpitti, 609 A.2d at 150.

Where the written terms of a contract can be read only one way and, thus, are not ambiguous, the court will interpret the contract as a matter of law.  Hullett v. Towers, Perrin, Forster & Crosby, 38 F.3d 107, 111 (3d Cir. 1994).  A contract is not rendered ambiguous simply

---

[2]Because this case is in federal court pursuant to the Court's diversity jurisdiction, both parties appear to acknowledge that their dispute is governed by the substantive law of Pennsylvania.  See, Erie Railroad Co. V. Thompkins, 304 U.S. 64 (1938).

because the parties disagree on its interpretation.  State Farm Fire & Cas. Co. v. MacDonald, 850 A.2d 707, 710 (Pa. Super. 2004).   Rather, a contract is ambiguous only when "it is susceptible of two reasonable alternative interpretations."  Hullet, 38 F.3d at 111.

Pennsylvania courts apply the "plain meaning" rule of contract interpretation, which assumes "the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous, the intent is to be discovered only from the express language of the agreement."  Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982).  See also, Hullet, 38 F.3d at 111.  The plain meaning approach "enhance[s] the extent to which contracts may be relied upon by contributing to the security of belief that the final expression of *consensus ad idem* will not later be construed to import a meaning other than that clearly expressed."  Steuart, 444 A.2d at 663.

In its third-party complaint, DNB first references clauses in the Construction Contract's General Conditions that detail Ehret's responsibilities.  Paragraph 3.2.1 of the General Conditions requires Ehret to study and compare construction drawings and specifications.  In the event that Ehret discovered an error, inconsistency or omission, Ehret was to report it to DNB.  If Ehret failed to report such a known problem, Ehret would "assume appropriate responsibility for such performance and ... bear an appropriate amount of the attributable costs for correction."   Third-Party Compl., General Conditions ¶ 3.2.1, attached as Ex. B.  Paragraphs 3.3.1 and 3.3.4 of the General Conditions require Ehret to supervise construction and inspect completed work.

Although these various features of the General Conditions detail features of Ehret's performance under the Construction Contract, nowhere do they state – or even suggest – that either Ehret or Waynesborough intended to give DNB the benefit of that promised performance.

The plain import of the referenced paragraphs is only that Ehret was not to stand by silently if it became aware of problems with DNB's design.  No reasonable interpretation of these specified clauses confer identifiable benefits on DNB rather than simply providing Waynesborough additional protection.

For its third-party beneficiary claim, however, DNB also relies on a limited indemnity clause in the Construction Contract.  Specifically, the clause reads:

> To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architects, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (excluding the Work itself...) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable...

Third-Party Compl,. Ex. B ¶ 3.18.1.  Thus, the critical issue for purposes of considering DNB's third-party beneficiary claim based on this contractual provision is to determine whether Waynesborough's complaint seeks damages "attributable to...injury or destruction of tangible property" other than the "Work" of the clubhouse construction itself.  When read in the light most favorable to DNB, however, Waynesborough's complaint may seek recovery for both the "Work" itself and other tangible property damage.  Waynesborough asserts that DNB's breach of contract and professional negligence "caused water to infiltrate the interior of the clubhouse at various points causing [Waynesborough] significant damages including but not limited to requiring [Waynesborough] to engage in costly evaluations and renovations, *requiring [Waynesborough] to replace water damaged items*, and diminishing [Waynesborough's ] use and enjoyment of the clubhouse."  Complaint ¶¶ 29, 38 (emphasis added).  Accordingly, ¶ 3.18.1, quoted immediately

-7-

above, responds directly to that portion of Waynesborough's complaint that appears to seek

damages for such items that, it appears at this juncture, are other than the "Work" itself.

However, Ehret asserts that DNB's focus on ¶ 3.18.1 ignores that Paragraph's relation to

the rest of the Contract.  The Construction Contract specifically states in its General Conditions

section: "The Contract Documents shall *not* be construed to create a contractual relationship of

any kind (1) between the Architect [DNB] and Contractor...." Third-Party Compl. Ex. B, ¶ 1.1.2

(emphasis added).  Such a straightforward clause requires the Court to view suspiciously any

claims by DNB that Ehret and Waynesborough intended DNB to be a third-party beneficiary of

the Construction Contract inasmuch as the document itself eshews any such intent or construction.

Pennsylvania law requires courts to narrowly interpret indemnity provisions, giving great

emphasis to the parties' intentions as evidenced by the entire contract.  First National Bank of

Spring Mills v. Walker, 289 Pa. 252, 137 (1927); Ruzzi v. Butler Petroleum Co., 527 Pa. 1

(1991).

In addition, while DNB relies on ¶ 3.18.1 to support its claims for indemnity and

contribution, it ignores its neighboring provision, ¶ 3.18.3, which states:

> The obligations of the Contractor under this Paragraph 3.18 shall *not* extend to the liability
> of the Architect, the Architect's consultants and agents and employees of any of them
> arising out of (1) the preparation or approval of maps, drawings, opinions, reports,
> surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give
> directions or instructions by the Architect, the Architect's consultants, and agents and
> employees of any of them provided such giving or failure to give is the primary cause of
> the injury or damage.

Third-Party Compl., Ex. B ¶ 3.18.3 (emphasis added).  The subject matter of the specific

limitations contained in ¶ 3.18.3 covers many of the precise claims articulated in

Waynesborough's suit, namely, DNB's alleged professional negligence in designing the

clubhouse and its alleged failure to appropriately oversee the construction work.

The Pennsylvania Superior Court recently addressed the language and reach of Paragraph 3.18.3 in Chester Upland School Dist. v. Edward J. Meloney, Inc., 901 A.2d 1055 (Pa. Super. 2006).  In Chester Upland, the school district filed suit against the architect for negligence and breach of contract, and the architect, in turn, sought indemnification from the contractor for attorneys' fees, costs and expenses in defending itself against the school district's suit.  Id. at 1058. In examining a construction contract with language almost identical to the Waynesborough-Ehret Contract – and similar possibility of internal contradiction – the Superior Court interpreted ¶ 3.18.3 in relation to ¶ 3.18.1 and other limited indemnification clauses found throughout that agreement. That court concluded that ¶ 3.18.3 barred the architect's claim for indemnification from a contractor on claims of professional negligence and breach of contract asserted against the architect by the owner because such claims did not stem from damage to tangible property other than the project work itself.  Id. at 1063.  Chester Upland expressly provides, however, that the contractor remains "liable for claims for damage to tangible property *provided that* the tangible property is not the Work itself."  Id. at 1061.

At this stage in the present litigation, while recognizing that it may well develop through discovery that the only damage for which Waynesborough is suing DNB is damage attributable to injury to the "Work" itself – for which DNB could not invoke the Waynesborough-Ehret contract – the Court at this point must accept all well-pleaded allegations in the complaint and view them in the light most favorable to DNB.  Under the generous reading required at this stage in the litigation, Waynesborough's action includes claims for damage to tangible property other than the "Work" itself, namely, unspecified "water damaged items."  Complaint ¶¶ 26, 38.  Accordingly,

the Court finds that DNB has pleaded sufficiently to continue to pursue indemnity from Ehret

under the Construction Contract for claims for damage to Waynesborough's tangible property other

than the clubhouse project itself, namely, for any water damaged items not part of the clubhouse

project work itself.

**B. Common Law Indemnity and Contribution Claims**

DNB's remaining third-party claims for common law indemnity and contribution are

asserted under Rule 14(a).  A claim may be asserted under Rule 14(a) only when the third party's

liability is "in some way dependant on the outcome of the main claim or when the third party is

secondarily liable to the defendant."  C. Wright & A. Miller, *Federal Practice and Procedure* §

1446 (2d ed. 1990).

The classic statement of the right to indemnity is that it "enures to a person who, without

active fault on his own part, has been compelled, by reason of some legal obligation, to pay

damages occasioned by the initial negligence of another, and for which he himself is only

secondarily liable."  Builders Supply Co. v. McCabe, 366 Pa. 322, 325 (1951).   Accordingly, the

common law right of indemnity is not simply a means of allocating responsibility between parties

who are more and less responsible for alleged injuries.  Instead,

> it is a fault-shifting mechanism operative only when a defendant who has been held liable to
> a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was
> actually responsible for the action that occasioned the loss.  If, however, the party seeking
> indemnification is actively negligent or is guilty of an independent act of negligence that also
> is the cause of the underlying injuries, indemnity is not available as a matter of law.

Foulke v. Dugan, 212 F.R.D. 265, 270 (E.D. Pa. 2002) (citing Consolidated Rail v. Youngstown

Steel Door Co., 695 F. Supp. 1577, 1581 (E.D. Pa. 1980)).

While Waynesborough's complaint can be construed to allege primary negligence by DNB in failing to adequately prepare construction drawings and specifications, the complaint also includes allegations of secondary negligence by DNB.  In particular, the complaint alleges that DNB failed "to assure the clubhouse was constructed in a manner which would prevent water infiltration" and failed "to adequately review substitutions and/or modifications to the construction drawings and specifications made by contractors."  Complaint ¶¶ 28(d), (e).  Considered in the light most favorable to DNB, at least these two of Waynesborough's factual allegations may fairly be viewed as allegations of DNB's secondary negligence, that is negligence in the supervision of Ehret and, as a result, a failure to forestall or correct Ehret's alleged errors.  Accordingly, DNB has asserted a proper claim for common law indemnity.

DNB also asserts that it is entitled to contribution from Ehret because DNB and Ehret  are joint tortfeasors.  "Under Pennsylvania substantive law, a right to contribution arises only among joint tortfeasors."  Foulke, 212 F.R.D. at 270.  For parties to be joint tortfeasors, they "must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury."  Laprogata v. Qualls, 263 Pa. Super. Ct. 174, 179 n.4 (1979) (quoting *Black's Law Dictionary*, 4ᵗʰ ed. (1968) at 1661).  Pennsylvania's Uniform Contribution Among Tortfeasors Act defines joint tortfeasors as "two or more person jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."  42 Pa.C.S. § 8322.  "Two persons are not acting jointly for the purposes of committing a joint tort if 'the acts of the original wrongdoer [and the joint tortfeasor] are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff.'"  Foulke, 212 F.R.D. at 270 (quoting Laprogata, 263

-11-

Pa. Super. Ct. at 179, n.3).

DNB claims that "Waynesborough alleges that its property was harmed as a result of [DNB's] allegedly negligent failure to observe that Ehret was performing its construction work negligently." Defendants'/Third-Party Plaintiffs' Response to Third-Party Defendants' Motion to Dismiss ("Response") at 6. See, Complaint ¶¶ 28(d), (e). DNB alleges in its third-party complaint that Ehret negligently performed its construction work and failed to inform DNB and Waynesborough of problems with the project. See, Third-Party Complaint ¶ 18. Accordingly, DNB argues that if "Waynesborough successfully demonstrates that it was harmed by [DNB's] alleged negligence in failing to observe Ehret's negligent construction, [DNB] and Ehret will be 'jointly or severally liable in tort for the same' alleged harm to Waynesborough." Response at 6-7. Joint or several liability will exist "even though DNB and Ehret did [not] [sic] act together because their alleged negligence 'unite[d] in causing a single injury.'" Response at 7 (quoting Pride Mobility Products Corp. v. Dewert Motorized Systems, 2006 U.S. Dist. LEXIS 48497, at *15 (M.D. Pa. 2006) (quoting IAP Worldwide Servs. v. Uti United States, Inc., 2006 U.S. Dist. LEXIS 4766, at *43 (E.D. Pa. 2006))).

Accordingly, taking DNB's factual assertions as true and, as required, giving DNB the benefit of every favorable inference raised by its allegations, such allegations could, if proven, establish a cause of action for contribution.


**B. Pennsylvania's Economic Loss Doctrine**

While both DNB and Ehret are in contractual privity with Waynesborough, they are not in privity with each other. Accordingly, DNB's claims for indemnity and contribution can be based

-12-

only on Ehret's alleged negligence *vis á vis* DNB.

Ehret argues that because its alleged negligence caused only economic injuries, the claims must be dismissed under Pennsylvania's economic loss doctrine.  "Pennsylvania law does not recognize a cause of action between parties not in privity of contract for negligent acts that result in only economic injuries." HCB Contractors v. Rouse Associates, 1992 U.S. Dist. LEXIS 16619, at *5 (E.D. Pa. Oct. 23, 1992). See also, Gittens-Altman v. HCB Contractors, 1992 U.S. Dist. LEXIS 13431, at *4 (E.D. Pa. Sept. 8, 1992).

Economic loss is defined as "a negative concept which provides that a plaintiff may not recover in tort for losses which are purely economic, *i.e.*, not involving personal injury or property damage." Palco Linings Inc. v. Pavex, Inc., 735 F. Supp. 1269, 1270 (M.D. Pa. 1990).  For example, if a defendant negligently ruptures a water main, the plaintiff may seek recovery for direct damages arising from flooding, property destruction and personal injury, but may not seek recovery for strictly economic damages such as operating losses or loss of wages. See, Moore v. Pavex, Inc., 356 Pa. Super 50, 54 (1986).

Gittens-Altman v. HCB Contractors is instructive here.  In that case, after the general contractor filed suit against the owners of a construction project, the owners filed a third-party complaint against the project architect, with whom the owners were in contractual privity.  The owners sought indemnification and contribution based, in large part, on the architect's general negligence.  The architect then filed a third-party complaint against a number of contractors and their sureties seeking contribution and indemnification to the extent that the architect may be found liable to the owners.   A contractor's surety sought dismissal of the third-party complaint, and the court held that the architect's contribution and indemnification claims failed under Pennsylvania

-13-

law.  1992 U.S. Dist. LEXIS 13431, at *1-4.  The court found that Pennsylvania law does not

recognize a cause of action between parties not in privity of contract for negligent acts that result in

only economic injuries.   Id. at *5.  Unlike DNB's claim here, Gittens-Altman v. HCB Contractors

dealt with third-party complaint allegations of breach of contract and recovery of costs and

attorneys' fees.  The court found"no set of facts that would allow the losses claimed to be

characterized as other than economic losses" existed.  Id. at *6.  Therefore, the court applied the

economic loss doctrine to dismiss the third-party case.

When DNB's pleading against Ehret is read in the light most favorable to DNB, however,

Waynesborough's complaint must be seen as seeking recovery for both economic damages and

property damage.  Waynesborough asserts that DNB's breach of contract and professional

negligence "caused water to infiltrate the interior of the clubhouse at various points causing

[Waynesborough] significant damages including but not limited to requiring [Waynesborough] to

engage in costly evaluations and renovations, requiring [Waynesborough] to replace water

damaged items, and diminishing [Waynesborough's ] use and enjoyment of the clubhouse."

Complaint ¶¶ 29, 38.  Under the economic loss doctrine DNB may not seek indemnification or

contribution from Ehret for purely economic damages such as the alleged loss of use of the

clubhouse, but DNB may seek indemnification or contribution for property damage.  Accordingly,

DNB's claims for common law indemnity and contribution survive dismissal at this time.


**IV. Conclusion**

Although it is clear that the DNB claims against Ehret cannot proceed completely

unfettered, for the reasons discussed above, the Court will deny the Motion to Dismiss in order to

permit discovery to proceed and a more distinct appreciation of the matters actually in dispute to be

delineated.  Once that is achieved, the parties and the Court will be better able to determine

whether DNB has a viable claim against Ehret.  An appropriate Order consistent with this

Memorandum follows.


                                        BY THE COURT:


                                        S/Gene E.K. Pratter
                                        GENE E.K. PRATTER
                                        UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WAYNESBOROUGH COUNTRY CLUB :
OF CHESTER COUNTY :
    Plaintiff, :
      :
  v. :
      :
DIEDRICH NILES BOLTON ARCHITECTS, :
INC., NILES BOLTON ASSOCIATES, INC., :
A. RAY DOUGLAS, JR., : CIVIL ACTION
    Defendants :
      :
and :
      : NO. 07-155
DIEDRICH NILES BOLTON ARCHITECTS, :
INC., NILES BOLTON ASSOCIATES, INC., :
A. RAY DOUGLAS, JR., :
    Third-Party Plaintiffs :
      :
  v. :
      :
EHRET CONSTRUCTION COMPANY, INC. :
    Third-Party Defendant. :

## <u>ORDER</u>

  AND NOW, this 10th of March 2008, upon consideration of Third-Party Defendant's Motion to Dismiss (Docket No. 12), Memorandum in Law in Support of Motion to Dismiss (Docket No. 13), Third-Party Plaintiffs' Response (Docket No. 14), and Third-Party Defendant's Reply (Docket No. 15), it is hereby ORDERED that the Motion to Dismiss is DENIED as outlined in the accompanying memorandum.

      BY THE COURT:

      <u>S/Gene E.K. Pratter</u>
      GENE E.K. PRATTER
      UNITED STATES DISTRICT JUDGE

-16-