IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNESBOROUGH COUNTRY CLUB OF CHESTER COUNTY | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DIEDRICH NILES BOLTON ARCHITECTS, INC., NILES BOLTON ASSOCIATES, INC., A. RAY DOUGLAS, JR., | : | CIVIL ACTION |
| Defendants | : | |
| | : | |
| and | : | |
| | : | NO. 07-155 |
| DIEDRICH NILES BOLTON ARCHITECTS, INC., NILES BOLTON ASSOCIATES, INC., A. RAY DOUGLAS, JR., | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| EHRET CONSTRUCTION COMPANY, INC. | : | |
| Third-Party Defendant. | : | |

**MEMORANDUM AND ORDER**

GENE E.K. PRATTER, J.                                                                 JULY 21, 2008

Planning a new clubhouse, Waynesborough Country Club of Chester County ("Waynesborough") entered into an Architectural Services Contract with an architecture firm and a Construction Contract with a general contractor. After the clubhouse was complete, structural problems arose, and Waynesborough sued the architecture firm. The architecture firm then filed

a third-party suit against the general contractor seeking contractual and common law indemnity as well as contribution. The Court denied in part the motion to dismiss the architect's third-party suit, and the general contractor filed a counterclaim against the architect for negligent misrepresentation.

Diedrich Niles Bolten Architects, Inc., et al. ("DNB") now asks the Court to dismiss pursuant to Rule 12(b)(6) the counterclaim filed by Ehret Construction Company, Inc. ("Ehret"). DNB argues that the claim is barred by the applicable statute of limitations. Ehret opposes the Motion.

For the following reasons, the Court will deny the motion.

**I. Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley, 355 U.S. at 45-46. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley, 355 U.S. at 47. While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007) (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855,

859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Bell Atlantic, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburg v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**II. Factual and Procedural Background**

This diversity action arises out of the design and construction of a new clubhouse for Waynesborough.  DNB provided professional architectural services to Waynesborough for the project, and Ehret served as the project's general contractor and construction manager.

In the Complaint, Waynesborough alleges that it sustained damages as a result of "significant water leaks [that] developed at various places throughout the interior of the

clubhouse." Complaint ¶ 22. Waynesborough further alleges that the water leaks and resultant damages were caused by professional negligence and breach of contract by DNB in, *inter alia*, "failing to assure the clubhouse was constructed in a manner which would prevent water infiltration," and "failing to adequately review substitutions and/or modifications to the construction drawings and specifications made by contractors." Id. ¶¶ 28(d), (f) & 37(d), (f). DNB joined Ehret as a third-party defendant.

After Ehret's Motion to Dismiss was denied in part, Ehret filed an answer with a single counterclaim against DNB for negligent misrepresentation. Ehret claims that DNB's architectural work was deficient and that Ehret sustained damages in its own right as a result of having relied upon information supplied by DNB during construction of the clubhouse. Ehret asserts that the

> plans, drawings, specifications, and other architectural, engineering and technical information prepared, reviewed and furnished by [DNB] to Ehret and others was done so in the course of their respective business, professions and/or employment, and was further done so for their respective and substantial pecuniary gains.

Answer, Affirmative Defenses and Counterclaim ¶ 23. Ehret maintains that DNB knew that its drawings and other architectural documents would be used by Ehret during the construction of the clubhouse, and argues that these documents "were false, contained numerous errors, omissions, discrepancies and ambiguities, and were not otherwise in compliance with building and design requirements." Id. ¶¶ 24-25. Because of the alleged problems with DNB's documents, Ehret asserts that it "experienced severe job delays, disruptions, hindrances, interferences and inefficiencies which, *inter alia*, have prevented Ehret from performing its work in the time, manner and within the budget originally contemplated." Id. ¶ 27.

**III. Discussion**

Negligent misrepresentation claims are governed by a two-year statute of limitations. 42 Pa. C.S. § 5524(7). Although Rule 12(b) does not explicitly permit the assertion of a statute of limitations defense via a motion to dismiss, the Third Circuit Court of Appeals permits a defendant to assert a limitations defense in a Rule 12(b)(6) motion "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Zankel v. Temple University, No. 06-2829, 2007 WL 2359751, at*1 (3d Cir. Aug. 20, 2007) (quoting Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002)). Thus, "[g]ranting a Rule 12(b)(6) motion based on statute of limitations grounds is proper if the complaint facially shows noncompliance with the limitations period." Caleb v. CRST, Inc., 43 F. App'x 513, 515 (3d Cir. 2002) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir.1978)). However, if a limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id. (quoting Bethel, 570 F.2d at 1174).

Application of a statute of limitations is often complicated by a plaintiff's invocation of the "discovery rule" or other principles.[1] The "discovery rule" is designed to "ameliorate the

---

[1] As the Court of Appeals has explained,

> statutes of limitations do not establish absolute guarantees that a party will not be sued after a certain date. Through a variety of legal and equitable principles, e.g., tolling, laches, or discovery rules, the time period in which a suit may be brought may extend far beyond the initial time period established in the applicable statute of limitations.

Powers v. Southland Corp., 4 F.3d 223, 233 (3d Cir. 1993).

sometimes harsh effects of the statute of limitations . . . and tolls the accrual of the statute of limitations when a plaintiff is unable, despite the exercise of due diligence, to know of the injury or its causes." Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006) (citations omitted). The rule "applies to toll the statute of limitations if at the time the injury occurs, the injury or its cause is neither known nor reasonably knowable." Fine v. Checcio, 870 A.2d 850, 859 (Pa. 2005). Thus, under the "discovery rule," "the statute of limitations does not commence to run at the instant that the right to institute suit arises, i.e., when the injury occurs." Id. Rather, the time period begins to run when "the injured party discovers or reasonably should discover [1] that he has been injured and [2] that his injury has been caused by another party's conduct." Id.

While the question of whether a statute of limitations has run on a claim "is usually a question of law for the trial judge, . . . where the issue involves a factual determination, the determination is for the jury." Caleb, 43 F. App'x at 516. Specifically, "the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id.

DNB asserts that Ehret's cause of action accrued on July 14, 2004, the date the local governmental authority issued a certificate of occupancy for the clubhouse. See, Motion, Ex. D.[2] DNB argues that the issuance of the certificate of occupancy signaled completion of the project. See, Motion at 6. After the work was complete, leaks subsequently occurred in the clubhouse, but Ehret "had no legal obligation to fix any alleged problems caused by [DNB's] alleged

---

[2]Ehret does not mention the certificate of occupancy in its counterclaim.

deficient work, nor does this constitute any delay in the completion of the project." Motion at 6 n.2.

Ehret notes that DNB has offered no legal support for its argument that the issuance of an occupancy permit is a definitive date for the running of a statutory period governing a negligent misrepresentation claim. Ehret argues that "its loss occurred after construction was completed and [that it] must be provided the opportunity to proceed with discovery to substantiate its allegations." Opposition to Motion at 8. Further, Ehret argues that the discovery rule tolled the statute of limitations for its claim until "it knew or had reason to know it was damages by the negligence of DNB." Id. at 10. Ehret asserts that it could not know of the claim until "the leaks were discovered" and "Waynesborough required Ehret to complete the construction of the clubhouse." Id. Assuming the allegations in the Counterclaim as true, water leaks developed in the clubhouse after initial construction was complete, Answer, Affirmative Defenses and Counterclaim ¶ 17, and these leaks caused Ehret to continue working on the project, increasing the cost of final completion. Id. ¶ 18. Ehret completed all of its work in conformity with the construction contract signed by Ehret and Waynesborough. Id. ¶ 19.

DNB responds by arguing that "any of the alleged costs and expenses allegedly incurred **after** the project was accepted by the owner and a certificate of occupancy issued do not translate to increased construction costs." Reply at 2 (emphasis in original). Rather, such expenses resulted from Ehret opting to remediate deficiencies because Waynesborough threatened suit. Because "Ehret had no legal obligation to fix any alleged problems which occurred after construction was completed alleged to be caused by [DNB's] work," Ehret's counterclaim must be dismissed. Id. However, such arguments would force the Court to look outside the pleadings

which is not permitted at this stage of the litigation.

**IV. Conclusion**

The Third Circuit is explicit in its requirements for dismissal based on a statute of limitations.  "[I]f a statute of limitations 'bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule a12(b)(6).'"  <u>Rycoline Prods. v. C & W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997) (quoting <u>Bethel v. Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978)).  Because any bar to Ehret's counterclaim is not apparent on the face of the pleadings, the Court will not dismiss Ehret's counterclaim for negligent misrepresentation.

        BY THE COURT:

        S/Gene E.K. Pratter
        GENE E.K. PRATTER
        UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNESBOROUGH COUNTRY CLUB OF CHESTER COUNTY | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DIEDRICH NILES BOLTON ARCHITECTS, INC., NILES BOLTON ASSOCIATES, INC., A. RAY DOUGLAS, JR., | : | CIVIL ACTION |
| Defendants | : | |
| | : | |
| and | : | |
| | : | NO. 07-155 |
| DIEDRICH NILES BOLTON ARCHITECTS, INC., NILES BOLTON ASSOCIATES, INC., A. RAY DOUGLAS, JR., | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| EHRET CONSTRUCTION COMPANY, INC. | : | |
| Third-Party Defendant. | : | |

**ORDER**

AND NOW, this 21st day of July 2008, upon consideration of Third-Party Motion to Dismiss (Doc. 37), Response in Opposition (Doc. No. 43), and Reply Memorandum (Doc. No. 44), it is hereby ORDERED that the Motion to Dismiss is DENIED as outlined in the accompanying memorandum.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE