**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WAYNESBOROUGH COUNTRY CLUB | : | |
| OF CHESTER COUNTY | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | CIVIL ACTION |
| Defendants | : | |
| | : | |
| and | : | |
| | : | NO. 07-155 |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| EHRET CONSTRUCTION COMPANY, INC. | : | |
| Third-Party Defendant. | : | |

<u>**MEMORANDUM AND ORDER**</u>

GENE E.K. PRATTER, J.                                        NOVEMBER 12, 2008


Planning a new clubhouse, Waynesborough Country Club of Chester County

("Waynesborough") entered into an Architectural Services Contract with an architecture firm and

a Construction Contract with a general contractor.  After the clubhouse was complete, structural

problems arose, and Waynesborough sued the architecture firm.  The architecture firm then filed

a third-party suit against the general contractor seeking contractual and common law indemnity as well as contribution.  The Court denied in part the motion to dismiss the architect's third-party suit, and the general contractor filed a counterclaim against the architect for negligent misrepresentation.  The Court then denied the architect's motion to dismiss the counterclaim.

Diedrich Niles Bolten Architects, Inc., Niles Bolton Associates, Inc., and A. Ray Douglas, Jr. ("DNB") now ask the Court to dismiss pursuant to Rule 56(c) all claims made by Waynesborough for attorneys' fees and litigation costs.  Waynesborough opposes the Motion.

For the following reasons, the Court will deny the motion.

## I. Legal Standard

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).   An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" only if it could affect the result of the suit under governing law.  Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.

Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record.  Celotex, 477 U.S. at 322-23.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

## II. Factual and Procedural Background

This diversity action arises out of the design and construction of a new clubhouse for Waynesborough.  DNB provided professional architectural services to Waynesborough for the project, and Ehret Construction Company, Inc. served as the project's general contractor and construction manager.

In the Complaint, Waynesborough alleges that it sustained damages as a result of "significant water leaks [that] developed at various places throughout the interior of the [new] clubhouse."  Compl. ¶ 22.  Waynesborough further alleges that the water leaks and resultant damages were caused by professional negligence and breach of contract by DNB in, *inter alia*,

"failing to assure the clubhouse was constructed in a manner which would prevent water infiltration," and "failing to adequately review substitutions and/or modifications to the construction drawings and specifications made by contractors." Id. ¶¶ 28(d), (f) & 37(d), (f). Waynesborough seeks attorneys' fees and costs for its professional negligence and breach of contract claims.

The Architectural Services Contract between Waynesborough and DNB contains a indemnification clause which reads:

8.4  Architect's Indemnity

8.4.1.  General Liability.  Except for claims arising from the Architect's performance or failure to perform professional services under this Agreement which are governed by Subsection 8.4.2. hereof, the Architect hereby agrees to indemnity, and hold harmless the Owner and its employees, officers and directors (collectively the "Indemnified Parties"), from and against loss, claims and expenses including reasonable attorneys' fees to the extent that they arise out of or are caused by:
          (a) any negligence of the Architect or its Consultants in connection with its services under this Agreement which results in personal injury or death or damages to tangible property;[1] or
          (b) any material breach or default of the Architect, directly or through its Consultants, of any representation, covenant, term or condition of this Agreement.

8.4.2.  Professional Liability.  The Architect hereby agrees to indemnify, and hold harmless the Owner and their respective employees, officers and directors against all loss, claims and expenses *including reasonable attorneys' fees* to the extent that they arise out of or are caused by a negligent act, error or omission of the Architect arising out of the performance or failure to perform professional services under this Agreement.  The Owner hereby agrees to indemnify and hold harmless the Architect, and their respective employees, officers and directors against loss, claims and expenses including reasonable attorneys' fees to the extent that they arise out of or are caused by negligence of [sic] acts of the Owner.

Compl., Ex. A (emphasis added).

---

[1] Waynesborough acknowledges that § 8.4.1(a) "is limited to third party claims." Plaintiff's Brief in Opposition to Defendants' Motion at 5.  Waynesborough asserts that the other portions of the indemnification provision apply to claims between Waynesborough and DNB.

**III. Discussion**

DNB asserts that Waynesborough's claims for attorneys' fees and litigation costs must be dismissed because the Architectural Service Contract's indemnity provision is limited to third-party claims, not claims between DNB and Waynesborough themselves.  As noted above, although Waynesborough acknowledges that provision 8.4.1 is limited to third-party claims, Waynesborough constructs its claim from other provisions in the Agreement.

Pennsylvania law allows for the recovery of attorneys' fees "from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties."  Fidelity-Philadelphia Trust Co. v. Philadelphia Transportation Co., 173, A.2d 109, 113 (Pa. 1961).  See also Lavelle v. Koch, 617 A.2d 319, 323 (Pa. 1992) ("We have consistently reaffirmed that in this Commonwealth, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.") Therefore, in terms of allocating attorneys' fees and costs, contracting parties may structure their agreement as they choose, and the Court should enforce such unambiguous contracts as they are written.  Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) ("[T]he words of a contract are to be given their ordinary meaning.  When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."); Central Dauphin School Dist. v. Am. Cas. Co., 426 A.2d 94, 96 (Pa. 1981) ("In general, parties may contract as they wish.") (citation omitted).  Accordingly, if the Court finds that the Architectural Services Contract between DNB and Waynesborough is unambiguous as to payment of fees and costs, the Court must enforce the provision according to its plain meaning.

DNB relies primarily on Jalapenos, LLC v. GRG General Contractor, Inc., 939 A.2d 925

(Pa. Super. 2007), to support its assertion that indemnity clauses such as the one that at issue here apply to third-party claims, not claims between the parties to a contract, and do not authorize a claim such as Waynesborough's here.  DNB notes that when considering the scope of an indemnity clause, the Superior Court in Jalapenos quoted approvingly the holding in Myers Building Industries, Ltd. v. Interface Technologies, Inc., 17 Cal.Rptr.2d 242, 254 (Cal. Ct. App. 2d Dist. 1993), where the court explained:

> A clause which contains the words "indemnify" and "hold harmless" is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons.  Indemnification agreements ordinarily relate to third-party claims.

939 A.2d at 932.

DNB does not, however, recognize that the indemnity clause in Jalapenos specifically excluded indemnification for losses involving the work itself, the precise losses for which the owner in that case was seeking indemnity.  Id. at 931-32.  Because the Architectural Services Contract here does not exclude indemnification for losses involving the work itself, the holding in Jalapenos provides the Court with no significant insight into this case.

DNB also looks to Exelon Generation Co., LLC v. Tugboat Doris Hamlin, 2008 U.S. Dist. LEXIS 41340 (E.D. Pa. May 27, 2008), for shelter from the claim for attorneys' fees and costs.  Exelon held that the defendant was not obligated to reimburse the plaintiff for attorneys' fees incurred in an action between contracting parties bound by an indemnity clause similar to the one at issue here.  The Exelon court relied on the Third Circuit Court of Appeal's analysis in the non-precedential opinion, Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associated, Inc., 637 Fed. App. 464 (3d Cir. 2005), a case in which a developer suing a builder

for breach of a construction contract sought reimbursement for attorneys' fees and costs.  Exelon emphasized language from Longport arguably suggesting that indemnity provisions and agreements to hold harmless presume responsibility to third parties.  Exelon, 2008 U.S. Dist. LEXIS 41340, at *5-7.  If that is so, then the DNB-Waynesborough contract would not unambiguously allow for claims for attorneys' fees and costs *inter se.*

　　　　Waynesborough asserts that the Court should not rely on Exelon because the analysis in that case was incomplete and because a more recent Third Circuit decision appears to supercede Longport.

　　　　Waynesborough argues that Exelon held that the indemnity clause applied only to third-party claims because, "the supplier agree[d] to indemnify, hold harmless and defend the company from and against...any claim...."  2008 U.S. Dist. LEXIS 41340, at *4.  In parsing the indemnity clause in such a manner, the court ignored portions of the clause applying more broadly to "loss" and "expense" suffered by the indemnitee.  Further, the court did not note that the indemnification clause applied to "damage to or loss of property (including the property of the [indemnitee])."  Id. at *2.  Property damage suffered by the indemnitee at the hands of the indemnitor would not result in a third-party claim, but, rather, would result in a direct claim by the indemnitee against the indemnitor.

　　　　In addition, according to Waynesborough, a later decision by our Court of Appeals renders Longport an unconvincing source of guidance even before considering its non-precedential status.  In SBA Network Services, Inc. v. Telecom Procurement Services, Inc., 250 Fed. Appx. 487, 492 (3d Cir. 2007) (also not precedential), the Court of Appeals held that a broadly drafted indemnification clause was not limited strictly to third-party claims.  SBA

involved a contract between the plaintiff and the defendant in which the defendant agreed to

perform work on a wireless communications tower, and pursuant to which the defendant agreed

to:

> protect, hold free and harmless, defend and indemnify...[the plaintiff] (including its
> agents and employees) for all liability, penalties, costs, losses, damages, expenses, causes
> of action, claims or judgments (including attorneys' fees) resulting from...damage to
> property of any kind, which...damage arises out of or is in any way connected with the
> performance of work under this Contract.

Id. at 491.  The defendant's contractors damaged the tower during the work, and the plaintiff

sued to recover related expenses and all attorneys' fees incurred in bringing the action.  Id. at

490.  The defendant argued "that the indemnity clause...did not permit [the plaintiff] to recover

attorneys' fees and costs as a result of prosecuting this action."  Id. at 492.  The court disagreed,

holding that there was "no support whatsoever for [the defendant's] reading of 'attorneys' fees'

as applying only to judgments obtained against [the plaintiff] by third parties."  Id.  The court

explained that

> [n]othing in the provision limits [the plaintiff's] recovery of attorneys' fees to defending –
> as opposed to prosecuting – legal claims.  Rather, [the indemnification provision]
> unambiguously provides that [the defendant] shall indemnify [the plaintiff] for "costs,
> losses, damages, expenses, causes of action, claims or judgments (including attorneys'
> fees)."

Id.  Thus, more recent pronouncement by our Court of Appeals on the issue of the scope of

indemnity provisions does not necessarily limit the application of indemnification provisions to

third-party claims so as to preclude an argument for attorneys' fees.

Such a holding suggests the validity of an earlier case from this district, STS Holdings,

Inc. v. CDI Corp., 2004 U.S. Dist. LEXIS 30984 (E.D. Pa. March 19, 2004), which held that a

broadly worded indemnification clause, like the one at issue here, was not limited to third-party

claims.  In <u>STS</u>, the plaintiff and the defendant entered into a stock purchase agreement that contained a $1 million limitation on indemnification liability and the following indemnification clause:

> 4.1 Indemnification by Seller.  The Seller...agrees to indemnify and hold harmless the Buyer....from and against:
>
> 4.1.1. any loss, liability, claim, obligation, damage or deficiency arising out of or resulting from (i) any misrepresentation or breach of warranty or any item set forth in Section 2.1 through 2.10 above, or (ii) the nonfulfillment of any agreement of the Seller...contained in this Agreement, including the failure by the Seller...to carry out any payment and related obligations.

<u>Id.</u> at *3-4.  The buyer sued the seller claiming it had breached the agreement, and the seller invoked the $1 million limitation of liability provision contained in the indemnification clause.

<u>Id.</u> at *2-3.  In response, the seller asserted that the indemnification clause had no applicability because it concerned only third-party claims.  <u>Id.</u> at *4.  The court rejected the seller's argument, stating, "the plain language of Section 4.1 reveals that Section 4 contains no such limitation. While third party claims are indeed among those subject to indemnification in Article 4 (e.g. claims by taxing authorities as set forth in Section 4.1.2), they are not the only claims identified." <u>Id.</u> at *4-5.  In so holding, the court noted that "numerous courts have held that the term 'indemnification' simply means 'compensation' for loss – whether the loss is caused by a party to the agreement or by a third party."  <u>Id.</u> at *5.[2]

---

[2] <u>See also</u> <u>Metex Mfg. Corp. v. Manson</u>, 2008 U.S. Dist. LEXIS 25107, at *28-30 (D.N.J. March 28, 2008), where the court held that the defendants' assertion that the word "indemnify" addresses only third-party claims would lead to a "tortured" interpretation of an indemnification clause that read as follows:

> [2] [The defendant] agrees to indemnify [the plaintiff] and its customers for and hold each of them harmless from any liability, loss, cost and expenses (including reasonable attorneys' fees) which [the plaintiff] and its customers or either of them may directly or indirectly incur arising from any alleged breach of [the defendant's] warranties and/or

Examining the plain language of the indemnification provision in the DNB-Waynesborough agreement within the context of relevant case law, the contract between Waynesborough and DNB is clear and unambiguous in providing for "expenses including reasonable attorneys' fees" arising from "any breach or default" of the Architectural Services Contract or from "a negligent act, error or omissions of [DNB] arising out of the performance or failure to perform professional services under" the contract.  Compl., Ex. A.  On its face, the provision does not include the limited scope claimed by DNB, and DNB has presented no evidence to suggest uncertainty or ambiguity.

**IV. Conclusion**

For the reasons discussed above, the Court denies Defendants' Motion for Partial Summary Judgment.[3]  An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

obligation hereunder.

[3] The Court notes that the contractual exposure to attorneys' fees and costs is limited by, dependant upon, and must be commensurate with a determination of DNB's professional negligence or breach of contract, a determination that has not yet been made.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WAYNESBOROUGH COUNTRY CLUB | : | |
| OF CHESTER COUNTY | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | CIVIL ACTION |
| Defendants | : | |
| | : | |
| and | : | |
| | : | NO. 07-155 |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| EHRET CONSTRUCTION COMPANY, INC. | : | |
| Third-Party Defendant. | : | |

## <u>ORDER</u>

AND NOW, this 12th day of November 2008, upon consideration of Defendants' Motion for Partial Summary Judgment (Doc. Nos. 47, 48) and Plaintiff's Response in Opposition (Doc. No. 52), it is hereby ORDERED that the Motion for Partial Summary Judgment is DENIED for the reasons set forth in the accompanying Memorandum.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE