IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNESBOROUGH COUNTRY CLUB | : | |
| OF CHESTER COUNTY | : | |
|       Plaintiff, | : | |
|   v. | : | |
| | : | |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | CIVIL ACTION |
|       Defendants | : | |
| | : | |
| and | : | |
| | : | NO. 07-155 |
| DIEDRICH NILES BOLTON ARCHITECTS, | : | |
| INC., NILES BOLTON ASSOCIATES, INC., | : | |
| A. RAY DOUGLAS, JR., | : | |
|       Third-Party Plaintiffs | : | |
|   v. | : | |
| | : | |
| EHRET CONSTRUCTION COMPANY, INC., | : | |
|       Third-Party Defendant. | : | |

**M E M O R A N D U M**

Hon. Gene E.K. Pratter                                                                                                                      May 17, 2011
U.S. District Court Judge

**Introduction**

      Construction projects, including the one at issue here, sometimes go awry. When they do, the various stakeholders point the fingers of liability all around. The same is true here. The project that is the root of this dispute concerns a major renovation to the clubhouse at Waynesborough Country Club ("Waynesborough"). Waynesborough has sued the project architect, Diedrich Niles Bolton Architects, Niles Bolton Associates and A. Ray Douglas, Jr. (collectively "Architect"), alleging professional negligence and breach of contract. Waynesborough contends that faults in the design and negligent oversight of the construction

process by the Architect resulted in substantial problems with and ongoing damage to the Waynesborough Clubhouse facility (the "Property") following completion of construction.

Architect, in turn, filed a third party complaint against the general contractor on the project, Ehret Construction, Inc. ("Ehret"), claiming that any problems with the facility were a result of Ehret's construction services. This third party complaint was filed on March 30, 2007. Thus, the Architect seeks contribution and indemnity to the extent that the Architect is found liable to Waynesborough. To assert these claims, the Architect relies upon rights it contends flow from the construction contract between Waynesborough and Ehret, and upon common law rights of indemnity and contribution. Ehret's motion to dismiss the third-party complaint was granted in part and denied in part.[1]

All parties took discovery from March 2007 to April 2009, and thereafter both the Architect and Waynesborough produced expert reports in which the experts largely attribute the defects in the Property to the actions and decisions of Ehret during construction. These reports are dated September 21, 2009, October 8, 2009, and April 21, 2010. Waynesborough contends that discovery in this matter revealed, according to expert reports produced as long as seventeen months ago, that significant construction deficiencies were attributable to Ehret. Accordingly, Waynesborough now seeks to amend its complaint at this extremely late juncture – after the close

---

[1] Competing interpretations of the Memorandum concerning Ehret's Motion to Dismiss the Architect's claims are the subject of briefing by the Architect and Ehret related to Ehret's Motion for Partial Summary Judgment (Doc. No. 53). That Motion was terminated when, on March 12, 2009, the Court, at the parties' request, ordered that the case be placed into suspense to permit the parties to pursue mediation (Doc. No. 72). The parties submitted supplemental briefing regarding this motion (Doc. Nos. 89 and 90). The Court will reinstate the Motion for Partial Summary Judgment upon the Court's order removing this case from suspense. The parties may make application to the Court if they wish to supplement their papers in connection with this motion.

of expert discovery – "to assert claims against Ehret for: (1) breach of contract; (2) negligence; (3) gross negligence and (4) fraud." Pl.'s Br. at 3, Doc. No. 83. The Architect supports and Ehret objects to the proposed amendment.

As discussed in detail below, because a valid arbitration agreement exists between Waynesborough and Ehret and encompasses the proposed new claims within its scope, the proposed amendment to the Complaint would be futile. Therefore, the Court denies Waynesborough's Motion.

**Factual and Procedural Background**

Well before the issuance of the expert reports, Waynesborough had already experienced substantial problems with the Property. As a result of significant leaks that developed at the clubhouse after the June 2004 completion of construction, Waynesborough retained TBS Services ("TBS") to identify and evaluate the source of the leaks and to recommend a solution to the water infiltration problem. As a result of TBS's findings, Waynesborough and Ehret entered an agreement whereby Ehret would perform remedial work under the supervision of TBS. This agreement was executed in June 2007, and in it the parties agreed that "Ehret shall prepare and present, and [Waynesborough] shall execute, a *change order under the Construction Agreement* to perform certain work[.]" 2007 Agreement, attached as Ex. C to Pl.'s Br. (emphasis added). The Agreement further provides that "Ehret and [Waynesborough] covenant and agree that any and all claims each may have against the other, arising out of or related to the Construction Agreement, including without limitation *the Change Order*, shall be preserved and maintained through both the completion of work pursuant to the Change Order and any legal proceedings

3

between [Waynesborough] and [the Architect]." Id. (emphasis added). The agreement also provides that "[t]he limitation period concerning any and all claims which Ehret and/or [Waynesborough] may have against each other shall be tolled from the date of this Agreement until the resolution, by litigation, settlement, agreement or otherwise, of [Waynesborough]'s claims against [the Architect], or any such earlier date as to which the parties may agree." Id.

Although Ehret executed the corrective work, Waynesborough continued to experience substantial leaks at the facility. Waynesborough retained various professionals to re-examine the facility. These inspections revealed substantially more problems than had been discovered originally. In the interim, Waynesborough filed the instant suit against the Architect, alleging that the Architect was liable for the flaws with the facility which resulted from professional negligence and breach of contract. As the reports from Waynesborough's experts came in, however, Waynesborough concluded that Ehret, in fact, was "grossly negligent in constructing the low roof joists and the veneer walls" and that Ehret must have known or reasonably should have known "that this work was improperly constructed and that they presented significant safety issues for [Waynesborough] and its patrons."

Due to the above-described conclusions, Waynesborough seeks to add Ehret as a defendant in its proposed Amended Complaint. See Proposed Am. Compl., attached as Ex. A to Pl.'s Br., ¶ 5. In Counts III-VI of the proposed Amended Complaint, Waynesborough alleges that Ehret is liable for breach of contract due to faulty construction; for unjust enrichment – in the alternative to breach – on account of having been paid in full when it failed to perform its obligations under the contract; for negligence in its performance of the construction work; for gross negligence in the anchoring of the veneer walls and in its departure from the design

4

drawings for the roof joists over the kitchen area; and, finally, for fraud in its representations regarding the proper construction of the roof joists and veneer walls. Id. ¶¶ 40-86.

**Legal Standard**

Granting leave to amend is within the discretion of the district court. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971). Federal Rule of Civil Procedure 15(a) provides that the Court should "freely give leave" for a party to file an amended pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "burden is generally on the non-moving party to demonstrate why leave to amend should not be granted." Rizzo v. PPL Service Corp., No. 03-5779, 2005 WL 1397217, at *3 (E.D. Pa. June 10, 2005).

Notwithstanding the aura of indulgence, the Court may deny a request to amend a pleading when the following circumstances exist: "'(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other part[ies].'" Juan v. Sanchez, 339 F. App'x 182, 187 (3d Cir. 2009) (quoting Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)). Delay alone typically is an insufficient basis on which to deny a plaintiff's motion to amend a complaint. USX Corp. v. Barnhart, 395 F.3d 161, 167 (3d Cir. 2004). However, if "delay . . . [has] become 'undue,' placing an unwarranted burden on the court, or . . . [has] become 'prejudicial,' placing an unfair burden on the opposing party," delay may be sufficient to deny a motion to amend. Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).

To determine whether an amendment would be futile, the Court applies the same analysis that it would invoke in the context of a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997), i.e., "[a]n amendment of the complaint is futile . . . if the amended complaint cannot withstand a . . . motion to dismiss," Riley v. Taylor, 62 F.3d 86, 92 (3d Cir. 1995) (permitting amendment where new claims "may have arguable merit"). Where, as here, the proposed parties have signed an agreement to arbitrate at least some of their disputes, the Court must consider whether the additional claims are arbitrable to determine whether amending the complaint to add that party and/or otherwise arbitrable claims would be futile. See Smith v. The Equitable, 209 F.3d 268, 272 (3d Cir. 2000) (interpreting the Federal Arbitration Act and stating, "when 'all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it'") (citations omitted); see also Mills v. Marjam Supply Co., Inc., 08-5726, 2009 WL 235593 (D.N.J. Jan. 30, 2009) (denying a motion to amend where "any possible claim Plaintiff could plead would be subject to arbitration rending the Amended Complaint futile"); G. & V. General Contractors, Inc. v. Goode, 1987 WL 9786, at *6 (E.D. Pa. Apr. 21, 1987) (stating "[o]nce it is determined that a valid agreement to arbitrate exists and the dispute in question falls within the scope of the agreement, a court must order arbitration").[2]

**Discussion**

Waynesborough argues that all factors the Court must consider when deciding whether to permit amendment of a complaint weigh in favor of permitting the proposed amendments to the

---

[2] Arguably, the parties to such an agreement *could* mutually agree to waive the arbitration provision, but the parties here have not raised such a possibility for the Court's consideration, and the Court will not engage in guesswork as to whether such an agreement would ever be reached.

complaint, contending that there has been no delay; there are no bad or dilatory motives at issue; there is no undue prejudice to Ehret, which has been a third party to the suit since March 30, 2007; and the proposed amendment is not futile. Specifically, Waynesborough asserts it has no dilatory motive in seeking to add Ehret now, as the "proposed amendment is designed to coordinate and streamline the litigation by having all of the claims among [Waynesborough], Ehret and [the Architect] heard in the same forum in a single action." Pl.'s Br. at 8-9. Waynesborough also contends that Ehret will suffer no undue prejudice if added as a defendant, as Ehret has been a party to the litigation since being joined by the Architect in March 2007. In anticipation of arguments that Ehret might make as to the futility of amendment on account of an arbitration provision in the parties' initial Construction Agreement, Waynesborough contends that the provision in the original agreement does not preclude litigation related to work done under the later, 2007 Agreement, which contained no equivalent arbitration provision. Waynesborough, relying upon the Pennsylvania Superior Court case, Thermal C/M Services, Inc. v. Penn Maid Dairy Products, 831 A.2d 1189 (Pa. Super. Ct. 2003), asserts that because under Pennsylvania law it is in the court's discretion to order parties to have their claims heard in court despite the existence of an arbitration clause and because some of Waynesborough's claims are not subject to the arbitration clause contained in the first contract, the court should permit the amendment of the complaint to name Ehret as a defendant. The Architect, in its response in support of the motion to amend, bolsters the arguments of Waynesborough, vigorously asserting that permitting amendment will streamline the litigation, promote efficient dispute resolution, and cause no prejudice to Ehret.

It is no surprise that Ehret opposes any amendment to the complaint. Ehret contends that

7

Waynesborough's delay in bringing claims against it, the adverse impact upon the existing action by allowing new claims to be introduced, not to mention the adverse impact upon the parties, along with an increased scope of litigation and the violation of the tolling agreement between Ehret and Waynesborough should Ehret be added as a party, are sufficient bases for the denial of Waynesborough's motion to amend. Ehret argues that, in addition to those factors, the arbitration agreement existing between Ehret and Waynesborough precludes the amendment of Waynesborough's complaint to add Ehret as a party. Ehret first states that, contrary to the arguments advanced by the Architect and Waynesborough, the 2007 Agreement between Ehret and Waynesborough clearly is subject to the arbitration provision of the original contract. Ehret then argues that the cases relied upon by Waynesborough and the Architect to argue that the arbitration agreement should be disregarded in favor of litigation are inapposite, because, according to Ehret, the facts in this matter are distinguishable in material ways from the cases cited by Waynesborough and the Architect, and that arguments under state law (which focus on efficiency considerations) are irrelevant because the Federal Arbitration Act requires arbitration provisions be honored even if inefficiency results.

Ehret and Waynesborough present arguments under federal and state frameworks, respectively. As detailed by Ehret, under the Federal Arbitration Act ("FAA"), disputes subject to an arbitration clause must proceed to arbitration notwithstanding any peculiar procedural postures, or splitting of claims and parties, that may result. Waynesborough, in contrast, notes that while Pennsylvania law also strongly embraces arbitration, courts in Pennsylvania sometimes permit parties to be added to a lawsuit, despite the existence of an arbitration provision between those parties, where the global resolution in litigation of claims involving

8

several different parties better serves the animating purpose of arbitration, namely, the efficient resolution of disputes. Neither Waynesborough nor the Architect address whether the FAA applies to the instant dispute, or why, as they argue, Pennsylvania law should apply.[3]

*A. The Application of the Federal Arbitration Act*

The FAA provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, federal law applies for purposes of analyzing an arbitration clause, even in diversity cases, where a contract may evidence a transaction involving interstate commerce. Goodwin v. Elkins & Co. 730 F.2d 99, 103 (3d Cir. 1984). Indeed, the FAA "applies substantively in both state and federal courts to arbitration contracts that are within its reach." Roadway Package System, Inc. v. Kayser, 1999 WL 817724, at *4 (E.D. Pa. Oct. 13, 1999) (citing Southland Corp. v. Keating, 465 U.S. 1, 14-16 (1984)), *aff'd*, 257 F.3d 287 (3d Cir. 2001), *abrogated in part on other grounds by* Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 583 n. 5 (2008).

"[T]he FAA's interstate commerce should be [as] broadly construed as any transaction that involves or affects interstate commerce[,] in order to place arbitration agreements on equal footing with other contracts." S&G Electric, Inc. v. Normant Security Group, Inc., No. 06-3759,

---

[3] While Ehret states that the FAA "is applicable to all transactions involving interstate commerce, including construction contracts between entities from different states," Ehret does not provide any substantive analysis as to whether the Construction Agreement is a contract involving interstate commerce.

9

2007 WL 210517, at *3 (E.D. Pa. Jan. 24, 2007) (citing Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 274-75 (1995)). An agreement need only have the slightest nexus with interstate commerce to be subject to the Arbitration Act. B.G. Balmer & Co., Inc. v. United States Fidelity and Guaranty Co., No. 98-732, 1998 WL 764669, at *3 (E.D. Pa. Oct. 30, 1998) (holding that an agreement establishing an agency relationship between a Maryland corporation and a Pennsylvania corporation clearly implicates interstate commerce); see also Crawford v. W. Jersey Health Sys. (Voorhees Div.), 847 F. Supp. 1232, 1240 (D.N.J. 1994).

Whether a contract evidences a transaction involving interstate commerce "is a factual determination that the district court [must make]." State Farm Mutual Auto. Insur. Co. v. Coviello, 233 F.3d 710, 713 n. 1 (3d Cir. 2000); Goodwin, 730 F.2d at 109; see also United States Fidelity and Guaranty Co. v. Bangor Area Joint School Authority, 355 F. Supp. 913, 915-16 (3d Cir. 1973); Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n, 387 F.2d 768, 772 (3d Cir. 1967). An agreement that contracts for the delivery and pick up of packages that have been or will be shipped interstate evidences a transaction involving commerce such that the FAA applies to that agreement. Roadway, 1999 WL 817724, at *4. An agreement between a corporate citizen of both Alabama and Maryland whose representatives in Pennsylvania regularly spoke with their colleagues in Alabama regarding a construction project in Philadelphia has also been interpreted as an agreement that involves interstate commerce and thus found subject to the FAA. S&G Electric, 2007 WL 210517, at *4. A rental car lease between a citizen of New Jersey and a citizen of Pennsylvania and California sufficiently involves interstate commerce to be subject to the FAA. Shubert v. Wells Fargo Auto Finance, Inc., No. 08-3754, 2008 WL 5451021 at *3 (D.N.J. Dec. 31, 2008). On the other hand, in cases involving lease agreements that relate

10

exclusively to property in one state, courts have held that the FAA does not apply to those agreements.  See, e.g., Eisenberger v. Chesapeake Appalachia, LLC, No. 09-1415, 2010 WL 1816646 at *2 (M.D. Pa. May 5, 2010).  Furthermore, at least one court has found that where all communication relating to an agreement occurred between the Pennsylvania offices of an Ohio corporation and a Pennsylvania corporation, that agreement does not involve commerce and the court instead looks to Pennsylvania law to interpret the agreement.  H.L. Libby Corp. v. Skelly and Loy, Inc., 910 F. Supp. 195, 198 (M.D. Pa. 1995).

The Construction Agreement at issue here identifies Ehret Construction Company, located in Wilmington, Delaware, as the Construction Manager, the Project as the Waynesborough Country Club clubhouse in the Philadelphia suburbs, and the Architect as Niles Bolton, Inc.  See Construction Agreement, attached as Ex. B to Waynesborough's Mot. to Amend, Doc. No. 83 [hereinafter "Construction Agreement"].  Waynesborough is a Pennsylvania corporation.  Compl., ¶ 1, Doc. No. 1.  The Architect is a Georgia corporation.  Answer ¶¶ 2-4, Doc. No. 8.  Ehret is a Delaware corporation.  Third-Party Answer ¶ 7, Doc. No. 36.  During the preconstruction phase of the project, Ehret, Waynesborough, and the Architect, or their representatives, were tasked with attending meetings and with consulting regarding site use and improvements, selection of materials, building systems, and equipment.  See Construction Agreement ¶ 2.1.2.  Under the terms of the Agreement, Waynesborough had to pay Ehret on a monthly basis for work performed during the construction phase of the project.  See id. ¶ 5.1. The Construction Agreement also required Ehret to forward, on a weekly basis, the daily construction reports to Waynesborough and the Architect.  See General Conditions of the Contract for Construction § 3.19.5, attached as Ex. B to the Construction Agreement [hereinafter

11

"General Conditions"].

Given the tenor of the instructive case law outlined above, the facts alleged here – namely those concerning the contract's treatment of payments, plans, management, and oversight between corporations of different states – are sufficient to find that the Agreement is subject to the FAA. See Martik Brothers, Inc. v. Kiebler Slippery Rock, LLC, No. 08-1756, 2009 WL 1065893 (W.D. Pa. Apr. 20, 2009) (finding a construction contract between a Pennsylvania corporation and an Ohio corporation involves interstate commerce and then applying the FAA); see also Seltzer v. Klein, 1989 WL 41288, at *3 (E.D. Pa. Apr. 20, 1989); Klauder and Nunno Enterprises, Inc. v. Choudhury, 1987 WL 17548, at *2 (E.D. Pa. Sept. 24, 1987); Monte v. Southern Delaware County Auth., 321 F.2d 870 (3d Cir. 1963).[4]

*B. The Existence of a Valid Agreement to Arbitrate*

Pursuant to federal law, then, to determine if there is an enforceable arbitration agreement between the parties that would require claims to be submitted to arbitration, a court must consider the following issues: (1) does a valid agreement to arbitrate exist between the parties, and (2) do the plaintiff's claims fall within the substantive scope of the valid arbitration agreement. See PaineWebber v. Hartmann, 921 F.2d 507, 510-511 (3d Cir. 1990); see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980). Doubts are generally resolved in favor of coverage of the arbitration agreement. See AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643 (1986).

---

[4] The Court also notes that neither Waynesborough nor the Architect raised objections, or replied, to Ehret's argument that the FAA applies to the present dispute.

Waynesborough and the Architect, in arguing that an arbitration provision does not apply to the claims that Waynesborough seeks to assert in its proposed amended complaint, contend that at least some of the defects in construction out of which the claims arise occurred pursuant to the 2007 Agreement between Waynesborough and Ehret, i.e., that there is no valid arbitration agreement between the parties as to issues arising under that Agreement. Specifically, they argue that because this agreement contained no arbitration provision, any claims arising out of construction performed under the agreement are not subject to arbitration. Ehret, in opposition, contends that the 2007 Agreement is controlled by the dispute resolution provisions of the original Construction Agreement between the parties, and that the argument of Waynesborough and the Architect regarding this document fails. Reviewing both the language of the documents and relevant case law, the Court finds Ehret's interpretation to be persuasive and concludes that a valid contractual arbitration provision does exist between Waynesborough and Ehret.

The Construction Agreement, signed by Ehret and Waynesborough and dated January 27, 2003, provides that dispute resolution for the construction phase encompasses "any other claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof shall be settled in accordance with Article 4 of the General Conditions[.]" Construction Agreement ¶ 9.2.1. The General Conditions define a "claim" as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." General Conditions § 4.3.1. "All claims and other disputes arising out of or in connection with the Contract Documents, whether relating to the

13

execution and enforceability thereof or of any provision herein, shall be subject to arbitration. Any arbitration shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, except where otherwise specifically provided for herein to the contrary." Id. § 4.5.1. As the excerpts from the General Conditions demonstrate, and as undisputed by all parties, the Construction Agreement clearly contemplates that all disputes arising out of or in connection with the Contract Documents shall be resolved by arbitration.

Article 7 of the General Conditions to the Construction Agreement provides the mechanism by which "Changes in the Work" shall proceed. "Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order . . . subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents." General Conditions § 7.1.1. "A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following: (1) a change in the Work; (2) the amount of the adjustment in the Contract Sum, if any; and (3) the extent of the adjustment in the Contract Time, if any." Id. § 7.2.1. The 2007 Agreement between Ehret and Waynesborough incorporated the phrase "Change Order", stating that the parties "covenant and agree" that "Ehret shall prepare and present, and [Waynesborough] shall execute, a change order under the Construction Agreement to perform certain work[.]" 2007 Agreement. The Agreement further states that "Ehret and [Waynesborough] covenant and agree that any and all claims each may have against the other, arising out of or related to the Construction Agreement, including without limitation the Change Order, shall be preserved and maintained through both the completion of work pursuant to the Change Order and any legal proceedings between [Waynesborough] and [the Architect]." Id.

14

Recognizing that the structure of the 2007 Agreement is not exactly that contemplated by Article 7 of the General Conditions – i.e., a written instrument prepared by the Architect and signed by all parties – it nevertheless specifically tasks Ehret with preparing, and Waynesborough with executing, a change order *under the Construction Agreement* to perform work included in Phase I of the remedial work that TBS identified as necessary in its Water Infiltration Action Plan. As such, the Court finds that the 2007 Agreement is subject to the dispute resolution provisions of the Construction Agreement and its General Conditions. Because the parties only disputed whether the 2007 Agreement was subject to the dispute resolution provisions of the Construction Agreement and the General Conditions, and did not dispute whether the agreement to arbitrate contained therein was valid, the Court finds that a valid arbitration agreement exists between the parties. See W.M. Linker Co., Inc. v. Feinberg, 62 A.2d 839 (Pa. 1949) (finding change orders subject to the dispute resolution provisions of the original agreement).

*C. The Scope of the Arbitration Provision*

Having determined that a valid arbitration agreement exists between the parties, the Court must now consider whether Waynesborough's claims fall within the substantive scope of the valid arbitration agreement. See PaineWebber v. Hartmann, 921 F.2d 507, 510-511 (3d Cir. 1990). "The FAA instructs courts to refer to principles of applicable state law when determining . . . the scope of an agreement to arbitrate." Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). "When determining the . . . scope of an arbitration agreement, there is a presumption in favor of arbitrability," although the court must determine on an issue-by-issue basis whether the claims are subject to that arbitration agreement. Id. (citing

15

Painewebber Inc. v. Hofmann, 984 F.2d 1372, 1376-77 (3d Cir. 1993)). Once again, any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).

Waynesborough seeks to hold Ehret liable for breach of contract due to its faulty construction, for – in the alternative – unjust enrichment on account of having been paid in full when it failed to perform its obligations under the contract, for negligence in its performance of the construction work, for gross negligence in its anchoring of the veneer walls and in its departure from the design drawings for the roof joists over the kitchen area, and for fraud in its representations regarding the proper construction of the roof joists and veneer walls. Proposed Am. Compl. ¶¶ 40-86. Thus, the question is whether, under Pennsylvania law, breach of contract, unjust enrichment, negligence, gross negligence and fraud are arbitrable claims under the dispute resolution provisions of the Construction Agreement and General Conditions.

As detailed in the General Conditions to the Construction Agreement, Waynesborough and Ehret agreed that "all claims and other disputes arising out of or in connection with the Contract Documents, whether relating to the execution and enforceability thereof or of any provision herein, shall be subject to arbitration." General Conditions § 4.5.1. Although the General Conditions also note that "[a]ny claim which is not subject to arbitration hereunder may be resolved by an action at law or in equity," Pennsylvania courts have found that language similar to that of the arbitration provision constitute an "unlimited" arbitration clause. See McCarl's, Inc. v. Beaver Falls Municipal Authority, 847 A.2d 180, 184 (Pa. Commw. Ct. 2004). Thus, it is unclear what, if any, claims relating to the execution of the contract might fall outside the ambit of the arbitration clause.

16

As styled by Waynesborough, the proposed claims for breach of contract, unjust enrichment, negligence, and gross negligence all relate to the actions and performance of Ehret during the course of construction. Thus, these claims clearly "aris[e] out of . . . the Contract Documents" as they "relat[e] to the execution . . . thereof[.]" General Conditions § 4.5.1. As such, they fall within the scope of the arbitration provision of the Construction Agreement. Regarding the fraud claim, "there is case support for holding that disputes involving allegations of fraud . . . can be encompassed by arbitration provisions." Seltzer, 1989 WL 41288, at *7; see also Warwick Township Water and Sewer Authority v. Boucher & James, Inc., 851 A.2d 953, 957-58 (Pa. Super. Ct. 2004) (finding that negligence claims, brought together with breach of construction contract claims, are arbitrable); Goodwin, 730 F.2d at 110 (stating that a claim of fraud is not outside the scope of an arbitration clause, as "[i]ntentional torts even less connected to the actual terms of the contract have been found by Pennsylvania courts to be subject to arbitration."). The fraud claim that Waynesborough seeks to assert against Ehret relies upon Ehret's allegedly false representations about later-discovered problems with the construction. Therefore, this claim too arises out of the subject of the Contract Documents and, as a result, is arbitrable pursuant to the broad language of the arbitration provision of the General Conditions.[5]

---

[5] The same outcome is required by Pennsylvania law. In Penn Maid Dairy Products, the case relied upon by Waynesborough to argue that efficiency mandates all claims between the parties be resolved via litigation, the Court found that an earlier-filed lawsuit would be dispositive of the precise issue that a party sought to litigate in a later-initiated arbitration proceeding. 831 A.2d 1189, 1192-93 (Pa. Super. Ct. 2003). In particular, the earlier action was expected to determine the balance, if any, owed upon a contract; this was the exact issue that the one party sought to compel to arbitration. Id. at 1193 n. 4. Because the issue in the later-filed arbitration would be completely disposed of in the earlier lawsuit, the Court invoked Pennsylvania Rule of Civil Procedure 213(a) to affirm the lower court's order denying the petition to compel arbitration pursuant to the contract between the parties. Id. at 1193. The Court also noted that allowing the arbitration and the litigation to progress concurrently could result in

**Conclusion**

The claims that Waynesborough seeks to assert against Ehret in its proposed amended complaint are all subject to arbitration, consistent with the arbitration provision of the Construction Agreement and its General Conditions. Because these claims are subject to arbitration, any amendment to add such claims in this litigation would be futile. Therefore, the Court must and does deny Waynesborough's motion.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

---

inconsistent verdicts. Id. at 1194.
    The instant case has a different procedural posture than that of the Penn Maid case. Here, the issues implicated by the litigation are whether the Architect was professionally negligent in its designs for the Property and in its oversight of the Property's construction. The Architect seeks common law and contractual indemnity and contribution from Ehret, alleging that to the extent it is found liable to Waynesborough, the responsibility for any problems in construction is actually due to the negligence, breach of contract, and implied warranties of Ehret.
    The Court cannot conclude that the instant lawsuit will be dispositive of the precise issue that would be the subject of arbitration between Ehret and Waynesborough. Certainly evidence of Ehret's alleged failures in construction will be introduced by the Architect to show that fault lay not with it but with the contractor. However, the entire scope of Ehret's liability might not be addressed by the present litigation such that the Court could override the contractually agreed-upon arbitration provision to force Ehret into court because the litigation would be dispositive of the precise issues that would otherwise be arbitrated. Penn Maid, 831 A.2d at 1193.
    Furthermore, unlike the parties in Penn Maid, Waynesborough and Ehret expressly contracted not only to arbitrate their disputes, but also to arbitrate them only after the completion of any litigation between the Architect and Waynesborough. Waynesborough functionally seeks the Court not only to override an agreed-upon arbitration provision, but also to override Waynesborough's prior agreement to hold any claims against Ehret in abeyance. Waynesborough does not provide citation to authority that would permit such action, and this the Court will not do.